**Emilie H. ZUSA, Plaintiff-Respondent,**

v.

**John G. ZUSA, Defendant-Appellant.**

No. 33383.

St. Louis Court of Appeals.

Missouri.

Oct. 21, 1969.

Motion for Rehearing or to Transfer to the Supreme Court Denied Nov. 18, 1969.

Application to Transfer Denied Jan. 12, 1970.

London & Greenberg, St. Louis, for defendant-appellant.

Heege & Heege, Clayton, for plaintiff-respondent.

WOLFE, Presiding Judge.

This is an action for divorce. The plaintiff charged that the defendant inflicted indignities upon her that rendered her marriage to him intolerable. The defendant denied the indignities alleged in the petition and contested the divorce. There were no children born of the marriage. The plaintiff did not seek alimony or attorney's fees and neither was awarded. The trial resulted in a decree of divorce for the plaintiff with restoration of her former name and the defendant appealed.

Before her marriage to the defendant, plaintiff was a widow. She lived in her own home with her sixteen year old daughter. The defendant, who had been married twice before, married the plaintiff on October 1, 1966, and moved into her home and they lived there with her daughter until January 8, 1968, when the defendant left.

The plaintiff testified that the defendant did some work on a patio and built a concrete curbing along the side of the driveway. Other than that he did nothing around the house but watch television. At times he treated her with kindness and affection. She stated that he did not want company and when friends called he acted bored and would not talk to them. He would go to bed and watch television while a guest was present in the house. This conduct embarrassed her to the extent that she would not invite friends to her home. He would not take her to places of amusement or out to dance although before their marriage they enjoyed dancing. Their principal recreation consisted of driving from their home in St. Louis County to someplace in the country where the defendant could hunt with a bow and arrow or fish. The plaintiff would drive the car on these occasions. They frequently did this on Saturdays and Sundays.

He repeatedly told her that she was stupid. He told her that her breath smelled worse than a dog's. She was attempting to reduce her weight and the defendant would compare her to a cow and say "moo" or "holy cow" to her. If she touched him when she turned over in bed he would tell her not to touch him, he couldn't stand it.

She stated that defendant told her that he was not happy and that he hated her. He got out a suitcase in the basement and told her, "I guess you know I am leaving because of my suitcase." She replied that she knew his suitcase was out and he said that he would stay until her daughter got married. On January 8 they were having dinner and it seemed like nothing suited him. Plaintiff said, "One word led to another and he said, 'Do you want me to leave,' and I said, 'Suit yourself, it's my home,' and he left."

After the defendant left he made threatening phone calls to the plaintiff and on one occasion he came to the house and grabbed her arms with such a strong grip that her upper arms were bruised and a neighbor said they turned black and blue. He was a strong man and did heavy manual work. On another occasion he came to the house and plaintiff did not answer the doorbell. At that time he kicked in the storm door and dented the regular door and ran his car into the garage door and dented it.

The defendant claimed that some of the statements he made to the plaintiff were in jest, others he denied having made. He admitted kicking in the storm door and he explained his wife's bruised arms by saying he was trying to seek a reconciliation and added "she bruised easily."

The next door neighbor who had entertained them testified that when she saw him in the yard she would try to speak to him but he would turn his back on her. He tried to explain his anti-social behaviour by saying that he was sick. He claimed that he had heart trouble. The medical record which he introduced in evidence showed that he had multiple "psychomatic" complaints. He claimed to love his wife.

The foregoing constitutes the pertinent part of the testimony and the appellant makes but one point here. He claims that the plaintiff's evidence was not sufficient to support a decree of divorce or a finding that the plaintiff was the injured and innocent party. We are of the opinion that the point raised is without merit.

The rule has long been established that our review in a case such as this is a trial de novo on the record before us. We reach our own conclusion, but in so doing we defer to the trial judge in cases resting on the credibility of the witnesses and the character of the parties as they might be displayed from the witness stand, Holmes v. Holmes, Mo.App., 251 S.W.2d 390; Scheer v. Scheer, Mo.App., 238 S.W.2d 865; Lambert v. Lambert, Mo.App., 222 S.W.2d 544.

According to the evidence of plaintiff the defendant was insulting to her friends to the extent that she was cut off from the amenities of social life. The words he used towards her were contemptuous and insulting. He displayed a violent character and from these the court could well reach the conclusion it did reach and find the indignities intolerable, and that the plaintiff was the innocent and injured party.

The judgment is affirmed.

BRADY, J., and BRUCE NORMILE, Special Judge, concur.